# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION NO. 06-30014 |
| VERSUS | * | JUDGE JAMES |
| TOCARRA L. LAWRENCE | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Suppress filed by the defendant Tocarra L. Lawrence ("Lawrence") (Document No. 17). For reasons stated below, it is recommended that the motion be **GRANTED.**

The hearing on the present motion established the following:

Shortly after midnight on Thursday, March 2, 2006, while patrolling a designated section of Interstate 20, Officer Todd Newton ("Newton") of the West Monroe Police Department stopped a black sport utility vehicle that was traveling eastbound. Immediately prior to initiating the stop, Newton had recorded the vehicle traveling 71 m.p.h. in an area with a posted speed limit of 60 m.p.h. After radioing a request for a check on the vehicle's license plates, Newton exited his police cruiser, approached the driver's side of the vehicle, and asked the driver, Lawrence, for her driver's license, registration, and proof of insurance. As Lawrence began to produce her license, the passenger in the vehicle, Stanley Causey ("Causey"), identified himself as the owner of the vehicle, but stated that he did not have the registration or proof of insurance in the vehicle. Lawrence then produced a valid Mississippi driver's license, and Newton asked Lawrence to exit the vehicle and move toward the rear.

Newton explained to Lawrence why he had stopped her and made a general inquiry into her travel plans. Lawrence stated that she and Causey, her boyfriend, were coming from the "Dallas/Houston area" where they had been visiting family since the previous Friday. Lawrence stated that they had stayed at the "Radisson" and "Motel 6." Newton testified that Lawrence

appeared calm and not "overly nervous." Sometime between obtaining Lawrence's license and concluding his questioning of her, Newton learned that Lawrence had no outstanding warrants for her arrest and no criminal history of any kind. In response to his earlier request for a check on the vehicle's license plates, the police dispatcher notified Newton that the vehicle's license plates were "duplicate tags," but that the vehicle had not been reported stolen and was not the subject of any outstanding warrants.[1]

After questioning Lawrence, Newton then approached Causey, who had remained in the vehicle, and attempted to confirm Lawrence's answers. Newton began by obtaining Causey's identification and running it through the National Crime Information Center's (NCIC) database, which later revealed that Causey had been arrested in 2001 for possession of narcotics. Prior to learning about Causey's criminal history, Newton asked Causey if he had ever been arrested, to which he responded, "No." Causey also stated that he and Lawrence were coming from Dallas, not Houston, where they had been since Monday, not Friday. Although Causey did confirm that he and Lawrence had stayed in a motel, he could not recall the motel's name or their room number. Newton returned to Lawrence and discovered that she too was unable to recall their room number.

Based on the inconsistent answers from Causey and Lawrence, Newton returned to Causey, the purported owner of the vehicle, and asked him if there was anything illegal in the vehicle, to which he responded, "No." Newton then asked if Causey would consent to a search of the vehicle; however, Causey refused. Newton testified that when he inquired about the presence of any illegal contraband in the vehicle, Causey shifted in his seat and took two deep breaths. Given Causey's refusal to consent, Newton asked him to step out of the vehicle and radioed for

---

[1] Later in the stop, sometime after questioning Lawrence and Causey, Newton performed a check on the vehicle using its vehicle identification number (VIN). As with his first check using the license plates, the check using the VIN confirmed that the vehicle was not stolen

assistance from a K-9 officer. Newton testified that he had no intention of issuing a citation to Lawrence by this time.

While waiting on the side of the road for the K-9 officer to arrive, Causey and Lawrence asked if they could retrieve their jackets from the vehicle. Given the cold night, Newton permitted them to do so. Shortly after retrieving their jackets, Causey remarked to Newton, "Officer, I smoke marijuana. The dog is going to alert on the vehicle. You can search it."[2] Despite Causey's sudden change of heart, Newton, pursuant to his regular practice, did not act on Causey's change in consent and continued to wait for the K-9 officer to arrive. However, Causey's unprompted consent after retrieving the jackets from the vehicle caused Newton to notice that, in addition to her jacket, Lawrence had also retrieved her purse. After informing Lawrence that she had only been permitted to get her jacket, Newton placed the purse back in the vehicle after asking Lawrence for permission. Newton noticed that the purse was unusually heavy.

The K-9 officer arrived shortly thereafter, approximately twelve (12) minutes after Newton had radioed his request, and the dog made a positive alert on Causey's vehicle. Newton began to search the vehicle and discovered a pound of methamphetamine and $1,000 in cash in Lawrence's purse. Newton then placed Causey and Lawrence under arrest.

Lawrence, in her present motion, challenges the legality of the initial stop of the vehicle she was driving, as well as the subsequent detention and search, under the Fourth Amendment. According to Lawrence, once Newton determined that the vehicle was not stolen and that neither she nor Causey were the subject of any outstanding warrants, his continued detention of her became unreasonable and exceeded the scope of intrusion allowed under the law. Because her

---

[2] Only Causey, the owner of the vehicle, gave consent to search. Lawrence, who had retrieved her purse in addition to her jacket, did not consent to any search; however, the contraband that was discovered later was found in her purse, which Newton had placed back in the vehicle, pursuant to her consent for him to do so.

3

detention was unreasonable under the Fourth Amendment, Lawrence seeks exclusion of the discovered narcotics as "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796 (1984).

## LAW AND ANALYSIS

The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The reasonableness of traffic stop searches and seizures under the Fourth Amendment is analyzed in accordance with the framework set forth by the Supreme Court in *Terry v. Ohio*. 392 U.S. 1 (1968). Under *Terry*, the analysis is two-tiered: (1) whether the officer's action of stopping the vehicle was justified at its inception; and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop. *Id.* at 19-20; *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001).

In *Whren v. United States*, the Supreme Court unanimously upheld a traffic stop in which an officer observed a defendant commit a traffic violation. 517 U.S. 806 (1996). In accordance with its long line of cases, the Supreme Court held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. The Supreme Court flatly rejected an invitation by the defendant to look to the subjective motivation of the police officer at the time of the stop. In *Whren*, the court found the stop reasonable under the Fourth Amendment because the officers had probable cause to believe that petitioners had violated the traffic code. The officer had observed the violation firsthand. *Id.* at 818; *see also United States v. Harrison*, 918 F.2d 469 (5th Cir. 1990).

To the extent that Lawrence challenges the propriety of the initial stop, her claim is without merit. Pursuant to *Terry* and *Whren*, stopping a vehicle for a traffic violation is justified so long as probable cause exists. *See Whren*, 116 S. Ct. at 1772; *Terry*, 392 U.S. 19-20. Newton testified that he directly observed the vehicle Lawrence was driving traveling in excess of the

4

posted speed limit, and subsequently confirmed by radar that the vehicle was traveling at 71 m.p.h. in a 60 m.p.h. zone. Lawrence has provided no evidence to controvert this fact. Newton had sufficient probable cause to stop and was wholly justified in stopping the vehicle.

Under the second prong of the *Terry* inquiry, the detention of a vehicle's occupants must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). The range of actions an police officer may take in conducting a routine traffic stop is wide and includes the following: examine the occupants' driver's license and identification and the vehicle's registration; run a computer check to investigate whether the driver has any outstanding warrants and if the vehicle was stolen; ask the driver to exit the vehicle; and ask the driver and any passengers about the purpose and itinerary of their trip and even other unrelated questions. *See generally Brigham*, 382 F.3d at 508; *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002); *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999), *reh'g denied*, 203 F.3d 883 (5th Cir. 2000); *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993).

Detention during these actions is reasonable under the Fourth Amendment; however, detention which occurs because of additional actions, particularly those taken after a police officer has verified that a driver is not subject to any warrants and that a vehicle is not stolen, may only be taken when there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime. *See United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). "The suspicion required to justify such a detention need not arise to the level of probable cause but must be based on more than an unparticularized suspicion or hunch." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). If reasonable suspicion appears during the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *See United States v. Lopez-Moreno*, 420 F.3d 420, 431 (5th Cir. 2005); *Brigham*, 382 F.3d at 507.

5

In this case, all of Newton's actions -- requesting the individuals' driver's licenses, asking Lawrence to exit the vehicle, and inquiring into the individuals' origin and itinerary -- were reasonable up to the point when he confirmed that Lawrence and Causey were not subject to any outstanding warrants and that the vehicle was not stolen. At this point, there was nothing left to do with regard to the initial stop for speeding other than to issue a citation or merely administer a warning. *See Jones*, 234 F.3d at 241 (noting that the basis for the stop was "essentially completed when the dispatcher notified the officers about the defendants' clean records."). Instead of issuing a ticket or sending Lawrence and Causey on their way with a warning, Newton returned to Causey and attempted to obtain consent to search the vehicle, which was denied. Newton testified that he did this with no intention of issuing a citation to Lawrence or Causey. Newton's continued detention and questioning of the defendants despite having no intention of issuing a citation and no facts which gave rise to a reasonable suspicion of criminal activity, as well as his subsequent request for the K-9 officer and search of the vehicle, constitute an unreasonable detention of Lawrence beyond the period that the initial reasons for the stop and subsequent questioning permitted.

Newton pointed to no emerging facts that gave rise to a reasonable suspicion that Lawrence and Causey were transporting narcotics or engaged in other criminal activity. While the Government relies on Lawrence's and Causey's inconsistent accounts of their travels as a basis for their continued detention, the United States Court of Appeals for the Fifth Circuit has stated that inconsistent answers, combined with other questions surrounding a vehicle's ownership, give "rise only to a reasonable suspicion that the car might have been stolen." *See Dortch*, 199 F.3d at 199. As stated above, Newton dispelled such a suspicion prior to seeking consent to search from Causey. Moreover, Newton testified that, throughout the initial phase of the stop, Lawrence had remained remarkably calm and did not engage in any furtive conduct. Even the fact that Causey did not possess any of the requisite paperwork for the vehicle did not

6

give rise to any suspicion of drug possession, but only supported the later dispelled suspicion that the vehicle might have been stolen.

The Government's claim that reasonable suspicion existed in this case is further betrayed by Newton's testimony during cross-examination about what exactly his suspicions were after hearing the inconsistent answers. Specifically, Newton stated, "Well, due to my experience of the interstate, all of the arrests I've made, due that their severe conflicting stories, I thought they could **possibly** be hauling narcotics." Tr. 33. Reasonable suspicion deals with probabilities, not possibilities. *See N.J v. T.L.O.*, 469 U.S. 325, 346 (1985) ("But the requirement of reasonable suspicion is not a requirement of absolute certainty: 'sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment. . . .'"); *Wiley v. Dep't of Justice*, 328 F.3d 1346, 1353 (Fed. Cir. 2003) ("Probable cause and reasonable suspicion are 'fluid concepts - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). A police officer must point to particular facts that make it probable, albeit to a lesser extent than that required for probable cause, that an individual is or will be engaging criminal activity. None of the facts that Newton noted support such a probability. While the undersigned is cognizant that an individual police officer's experience and training must be taken into account in determining if reasonable suspicion existed, the undersigned cannot ignore the absence of any particularized and articulable facts supporting such suspicion in this case.

Therefore, it is recommended that Lawrence's motion to suppress be **GRANTED**, and all fruits of the illegal search be excluded as evidence against her.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or

7

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of July, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE